**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **ALICIA OUSLEY, JOSHUA VOTAW, AND MICHAEL STARKEY,** ) | Civil Action No. 2:23-cv-01435 |
| ) | |
| Plaintiffs, ) | Magistrate Judge Kimberly A. Jolson |
| ) | |
| vs. ) | |
| ) | **PLAINTIFFS' UNOPPOSED MOTION** |
| **CG CONSULTING, LLC D/B/A** ) | **FOR APPROVAL OF COLLECTIVE** |
| **SCORES COLUMBUS, *ET AL.*,** ) | **ACTION SETTLEMENT** |
| ) | |
| Defendants. ) | |
| ) | |

On April 26, 2023, the Court granted Plaintiffs' Alicia Ousley ("Ousley"), Josh Votaw ("Votaw"), and Michael Starkey ("Starkey") ("Plaintiffs") and Defendants' CG Consulting, LLC ("CG"), Anthony Quaranta ("Quaranta"), and Nicholas Castaldo ("Castaldo") (CG, Quaranta, and Castaldo hereinafter "Defendants") (collectively hereinafter the "Parties") consent to the jurisdiction of Magistrate Judge Jolson pursuant to 28 U.S.C. § 636(c). The Parties request that the Court grant their Unopposed Motion for Approval of Collective Action Settlement as fair, reasonable, and adequate pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq*. The proposed Settlement will also resolve bona fide disputes involving alleged unpaid compensation claims under the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.03 ("OMFWSA"), the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15, Article II, Section 34a of the Ohio Constitution ("§ 34a"), and Ohio Revised Code § 2307.60 ("Ohio's Criminal Acts Statute") (the OMFWSA, § 34a, the OPPA, and Ohio's Criminal Acts Statute will be referred to collectively as the "Ohio Acts").

In support of this Motion, Plaintiffs submit the following exhibits:

**Exhibit 1:**     Collective Action Settlement Agreement and Release.

**Exhibit 2:**     Declaration of Daniel I. Bryant.

**Exhibit 3:**     [Proposed] Order Approving Collective Action Settlement Agreement.

As explained in the accompanying memorandum, the Parties have reached a settlement in which Defendants have agreed to make payments to Plaintiffs for allegations that they were not paid minimum wage for all hours worked during their employment with Defendants. As part of the Settlement, Defendants have also agreed to pay Plaintiffs' attorneys' fees comprised of Plaintiffs' Counsel's negotiated lodestar and their costs associated with prosecuting the wage and hour claims. The Settlement represents a resolution of bona fide disputes between the Parties and was reached after years of litigation, dispositive motion practice, and mediation before Magistrate Judge Kimberly A. Jolson. Plaintiffs represent that the Settlement is fair, reasonable, and adequate in all respects and respectfully request that the Court grant their Motion. Defendants do not oppose the instant Motion.

## MEMORANDUM IN SUPPORT

### I.     INTRODUCTION

Following significant discovery, data analysis, and dispositive motion practice, the record reflects that Plaintiffs and Defendants engaged in arms-length settlement negotiations to resolve collective action claims arising from the alleged underpayment of minimum wages under the FLSA and mirrored claims under Ohio law. Following mediation on March 6, 2023, the Parties reached a settlement of all wage and hour claims with respect to Counts VIII, IX, X, XI, and XV contained in the Third Amended Collective and Class Action Complaint. Plaintiffs respectfully submit that the settlement, memorialized in the Settlement Agreement and Release ("Settlement"

or "Agreement") and attached as Exhibit 1 is fair, reasonable, and adequate in all respects. As set forth herein, Plaintiffs respectfully request that the Court approve of the Settlement in all respects.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs' Allegations

On August 18, 2020, Representative Plaintiff Ousley filed a First Amended Collective and Class Action lawsuit, styled as *Ousley, et al.*, *v. CG Consulting, LLC, et al.*, Case No. 2:19-cv-01744-SDM-KAJ, in the United States District Court for the Southern District of Ohio, Eastern Division at Columbus, Ohio ("Action"). On July 20, 2021, Representative Plaintiffs filed their Third Amended Collective and Class Action Complaint alleging that Defendants failed to pay them in accordance with the FLSA, OMFWSA, § 34a, the OPPA, and Ohio's Criminal Acts Statute. (ECF No. 80, PAGEID # 735)

In particular, Representative Plaintiffs alleged that CG Defendants failed to pay them at least minimum wage and overtime compensation for all hours worked. Specifically, Representative Plaintiffs generally alleged that (1) Representative Plaintiff Ousley performed work on behalf of Defendants on April 19, 20, 24, 26, and 27, of 2018, but Defendants did not pay her minimum wage for such hours; (2) Defendants did not first provide a tip credit notice as required by 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59(b) prior to paying themselves and other employees to whom a tip credit was applied base wages that were less than minimum wage; (3) Defendants failed to pay Representative Plaintiffs Votaw and Starkey at least minimum wage because they (a) did not customarily and regularly receive over $30 per month in tips; and/or (b) regardless of receipt of tips, performed non-tipped job duties in excess of twenty percent (20%) of their job duties; (4) by paying Representative Plaintiffs Ousley and Votaw at base wages of $4.08 per hour in 2018, Defendants exceeded the tip credit permitted by Art. II, Section 34a of the Ohio Constitution and should have compensated Representative Plaintiffs the full minimum wage rates

under Ohio law during their employment; (5) Defendants willfully violated the FLSA by failing to pay Representative Plaintiff Votaw at the proper regular rate of pay resulting in unpaid overtime compensation; (6) as a result of the unpaid wages, they were not timely paid in violation of the OPPA; (7) Defendants failed to produce and maintain accurate wage and hour records under Art. II, Section 34a of the Ohio Constitution; and (8) by willfully violating the FLSA and violating Ohio law, Defendants committed a criminal act under Ohio Revised Code § 2307.60. (ECF No. 80, 766-80)

On August 10, 2021, Defendants filed their Answer, in which they strenuously denied all material allegations and claims asserted in the Act, further denied any violation of the FLSA, the Ohio Acts, and any other law, and asserted twenty-two (22) affirmative defenses. (ECF No. 83, Answer; Ex. 1, Agreement, ¶ 3)

On March 16, 2022, Representative Plaintiffs filed their Motion for Rule 23 Certification (ECF No. 103), Defendants filed their Response in Opposition (ECF No. 116) on April 20, 2022, and Representative Plaintiffs filed their Reply (ECF No. 118) on May 4, 2022. On May 18, 2022, Representative Plaintiffs also filed a Motion for Partial Summary Judgment (ECF No. 120) as to Counts VIII, IX, X, XI, and XV of Plaintiffs' Third Amended Collective and Class Action Complaint, Defendants filed their Response in Opposition (ECF No. 121) on June 8, 2022, and Representative Plaintiffs filed their Reply (ECF No. 122) on June 22, 2022. On December 16, 2022, the Court denied Plaintiffs' Motion to Certify Rule 23 Class and granted in part and denied in part Plaintiffs' Motion for Partial Summary Judgment. (ECF No. 125.) In doing so with respect to Plaintiffs' Motion to Certify Rule 23 Class, the Court held that commonality and typicality of Rule 23(a)(2) and (3) were not met. (*Id.*)

Thereafter, in order to avoid the burden, expense, risks, disruption, and uncertainty of protracted collective action litigation, the Parties filed Joint Request to Vacate Trial Schedule and Refer this Matter to Mediation (ECF No. 128; Ex. 1, Agreement, ¶ 4). On January 20, 2023, the Court granted the Parties' request to refer this matter to mediation before Magistrate Judge Kimberly A. Jolson, but denied their request to vacate trial schedule. (ECF No. 131, PAGEID # 2638-39)

On March 6, 2023, the Parties participated in mediation before Magistrate Judge Kimberly A. Jolson of the Southern District of Ohio, Eastern Division. At the conclusion of mediation, the Parties were ultimately able to reach a resolution as to the wage and hour claims (Counts VIII, IX, X, XI, XIII, and XV), which was memorialized the same day in a Memorandum of Agreement. (Ex. 1, Agreement, ¶ 6; Exhibit 2, Declaration of Daniel I. Bryant, ¶ 18)[1] That same day, Plaintiffs' Counsel sent a proposed draft of the Settlement to Defendants' Counsel and the Parties continued to work through the final details. (*Id*.) On May 4, 2023, the Parties fully executed the Agreement on the terms of a resolution of this matter in the total amount of $70,000.00. (*Id*.)

**B. <u>Summary of the Key Settlement Terms</u>.**

The Total Settlement Amount is $70,000.00. (Ex. 1, Agreement, ¶ 14; Ex. 2, Bryant Decl., ¶ 19) In particular, the Agreement reflects that the Total Settlement Amount will be divided in the following manner:  (1) $15,197.54 for individual payments; and (2) $41,160.31 in attorneys' fees (using the lodestar method) and $13,642.15 in costs associated with prosecuting this matter, all of which were significantly reduced as part of the negotiations in order to reach a resolution. (Ex. 1, Agreement, ¶¶ 14, 26, and 28; Ex. 2, Bryant Decl., ¶ 19)

---

[1] Hereinafter "Bryant Decl."

As outlined in the Agreement, the alleged damages with respect to Counts VIII, IX, X, XI, XIII, and XV of the Action were calculated based on the number of hours each Plaintiff worked during their applicable employment period. In particular, Plaintiff Ousley's period of employment was April 18, 2018 until May 24, 2018, Votaw's applicable three-year lookback period[2] is January 25, 2018 until August 10, 2018, and Starkey's applicable three-year lookback period[3] is May 18, 2018 until the end of his employment on August 24, 2018 (all applicable lookback periods collectively "Calculation Period"). (Ex. 1, Agreement, ¶ 10; Ex. 2, Bryant Decl., ¶ 20)

Next, Plaintiffs' alleged damages were calculated by taking the difference between each Plaintiff's base tip credit wage and the (higher) full minimum wage in Ohio for the applicable year. (Ex. 2, Bryant Decl., ¶ 21) For example, Plaintiff Ousley was paid a base tip credit wage of $4.05 per hour in 2018, so Plaintiff Ousley's alleged damages is the difference between $8.30 (Ohio's minimum wage in 2018) and $4.05, or $4.25. As such, Plaintiffs' Counsel multiplied $4.25 by the total number of hours she worked (124.85 hours) during her employment to arrive at $530.61. (*Id*.) Next, Plaintiffs' Counsel tripled that number because Art. II, Section 34a of the Ohio Constitution has a mandatory treble damages provision to arrive at the maximum potential recovery of $1,591.84. (*Id*.) The individual payment amounts for each Plaintiff as outlined in the Agreement was the result of the same methodology. (*See* Ex. 1, Agreement, ¶ 14) As a result, the individual payments Defendants have agreed to pay Plaintiffs represent 100% of the maximum potential recovery of damages each could have recovered at trial *and* treble damages (i.e. 300% of their alleged damages). (Ex. 1, Agreement, ¶ 29; Ex. 2, Bryant Decl., ¶ 22)

---

[2] Votaw's Consent to Join Form was filed on January 25, 2021 and his employment ended on August 10, 2018, so his calculation period was from January 25, 2018 until August 10, 2018.

[3] Starkey's Consent to Join Form was filed on May 18, 2021 and his employment ended on August 24, 2018, so his calculation period was from May 18, 2018 until August 24, 2018.

C. **APPROVAL IS APPROPRIATE IN THIS CASE.**

The Plaintiffs' claims for minimum wage violations were brought under the FLSA (and mirrored Ohio claims). As a general rule, employees' claims under the FLSA are non-waivable and may not be settled without supervision of either the Secretary of Labor or a district court. *Headspeth v. TPUSA, Inc.*, No. 2:19-CV-2062, 2022 WL 4094448, at *1 (S.D. Ohio Sept. 7, 2022) (Morrison, J.) (citing *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011)). *See* 29 U.S.C. § 216(b), (c). To approve a settlement agreement, a court must conclude that it is a "fair, reasonable, and adequate" resolution of a bona fide legal dispute. *Int'l Union, United Auto, Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (discussing a class action settlement under Federal Rule of Civil Procedure 23); *see also Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, at *3 (S.D. Ohio Dec. 2, 2016) (Dlott, J.) (applying the same factors to an FLSA settlement).

A. **The Settlement Satisfies the Factors Considered by the Sixth Circuit when determining that an FLSA Settlement is Fair and Reasonable.**

As recently observed by this Court, factors relevant to this determination include: (1) the risk of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the plaintiff's likelihood of success on the merits; and (5) the public interest in settlement. *Headspeth*, 2022 WL 4094448, at *1 (citing *Clevenger v. JMC Mechanical, Inc.*, No. 2:15-cv-2639, 2015 WL 12681645, at *1 (S.D. Ohio Sept. 25, 2015) (*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Id.* (quoting *Gentrup*, 2011 WL 2532922, at *3). Additionally, the

Court must separately assess the reasonableness of any proposed award of attorneys' fees and costs, even when they are negotiated as part of the settlement. *Vigna*, 2016 WL 7034237, at *4.

As discussed below, each of the relevant factors supports approval here.

### 1. No indicia of fraud or collision exists.

There is no indicia of fraud or collusion in reaching this Settlement and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-CV-1677, 2020 WL 4673163, at *2 (S.D. Ohio Aug. 12, 2020); *Gresky v. Checker Notions Co. Inc.*, No. 3:21-CV-01203, 2022 WL 3700739, at *5 (N.D. Ohio Aug. 26, 2022) (Helmick, J.) (citing *Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2021 WL 4145720, at *4 (N.D. Ohio Sept. 13, 2021)); *Satterly v. Airstream, Inc.*, No. 3:19-CV-107, 2020 WL 6536342, at *1 (S.D. Ohio Sept. 25, 2020) (Rice, J.). All settlement negotiations were extensive, at arm's-length, and only occurred after a lengthy exhaustion of the Parties' legal and factual positions at mediation before Magistrate Judge Jolson. (Ex. 1, Agreement, ¶¶ 4, 26, 43, ; Ex. 2, Bryant Decl., ¶ 18) Plaintiffs' Counsel, who is experienced in wage and hour class and collective actions, also support the settlement as fair and reasonable, and certifies that it was reached at arm's-length. *See Gresky*, 2022 WL 3700739, at *5 (arm's-length negotiations conducted by experienced counsel is evidence that settlement is fair).

### 2. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval

While the subject matter was not unfamiliar to Plaintiffs' Counsel, wage and hour matters, particularly class and collective actions are inherently complex, expensive, and time-consuming. *See, Gresky*, 2022 WL 3700739 at *5; *Harsh*, 2021 WL 4145720 at *5; *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019) (Rice, J.); *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 WL 6536342, at *5 (S.D. Ohio Sep. 25, 2020)

(Rice, J.) ("From the outset, the Court notes that wage and hour class and collective actions, such as this one, are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *5 (S.D. Ohio Aug. 17, 2018) (Watson, J.) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).

      If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted litigation, including trial(s) and the potential for appeal on one or more issues. The Settlement, on the other hand, provides immediate relief to Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of a resolution.  (Ex. 2, Bryant Decl., ¶¶ 18-33).

### 3.      Investigation was Sufficient to Allow the Parties to Act Intelligently.

      "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Satterly*, 2020 WL 6536342 at *5 (internal citations omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.* (internal citations omitted)*; Mitchell v. Indep. Home Care, Inc.,* No. 2:17-cv-717, 2019 WL 696941 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.) (internal citations omitted), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *see also Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977

(S.D. Ohio Oct. 3, 2018) (stating that "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

The Parties engaged in substantial investigation, analysis, multiple depositions, and lengthy briefing of summary judgment prior to negotiating the Settlement. Plaintiffs' Counsel reviewed the payroll and other wage data, including dates of employment, required to conduct their own analysis of Plaintiffs' alleged damages and Defendants' own assessment of the merits of Plaintiffs' claims and Defendants' defenses. In addition, Plaintiffs' assessed their potential risk of loss and likelihood of success at trial. Thus, the legal and factual issues in the case were thoroughly exhausted and debated by the Parties in reaching the Settlement at mediation. (Ex. 2, Bryant Decl., ¶¶ 18-33)

### 4. The Plaintiffs' Likelihood of Success on the Merits Favor Approval.

As demonstrated by the pleadings and arguments made before the Court, Counsel for both sides believe in the merits of their clients' positions. But, they nonetheless recognize that litigation of these types of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendants raised affirmative defenses to the claims, maintain that Plaintiffs are not entitled to any compensation, that they complied with the FLSA in good faith, and the outcome of either side is uncertain at trial. The possible recovery is also open to dispute. Even if Plaintiffs prove liability, the amount of recovery is uncertain and something upon which the Parties continue to disagree. (Ex. 2, Bryant Decl., ¶¶ 15, 31-33)

### 5. The Public Interest Favors Settlement.

Approval of a fair and reasonable settlement agreement promotes the public's interest in encouraging settlement of litigation. *Satterly*, 2020 WL 6536342 at *7, at *21; *Mitchell*, 2019 WL 696941, at *5-6 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation*

*adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.). The settlement provides immediate relief to the Plaintiffs, avoids further litigation in a complex matter, and frees the Court of judicial resources, all of which weigh in favor of approving the Settlement. *See Satterly*, 2020 WL 6536342, at *7.

       **B.**      **The Settlement Distributions are Fair, Reasonable, and Adequate.**

In addition to evaluating the factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *Yorba v. Barrington Sch., LLC*, No. 2:21-CV-691, 2022 WL 2436952, at *5 (S.D. Ohio July 5, 2022) (Sargus, J.) (quoting *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *6, (S.D. Ohio Sep. 9, 2016) (Marbley, J.).

The recovery in wage and hour cases is often 7-11%. *Jones v. Converse Elec., Inc.*, No. 2:21-CV-01830, 2022 WL 15654293, at *3 (S.D. Ohio Oct. 28, 2022). *See Yorba*, No. 2:21-CV-691, 2022 WL 2436952, at *5 (S.D. Ohio July 5, 2022) (Sargus, J.); *Smith v. SAC Wireless, LLC*, No. CV 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (Parker, J.); and *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010).

In this case, Plaintiffs' individual settlement awards represent 100% of their maximum *potential recovery*. (Ex. 1, Agreement, ¶ 29; Ex. 2, Bryant Decl., ¶¶ 22-23) Not only does this overwhelmingly exceed the Court's standard in terms of likely recovery, it represents their maximum *potential* recovery. As such, Plaintiffs could not have received a better outcome. *See Myres v. Hopebridge, LLC*, No. 2:20-CV-5390, 2023 WL 2399056, at *5 (S.D. Ohio Feb. 21, 2023) (Sargus, J.) (observing that "[r]ecovery of 76.5% of likely recovery of alleged unpaid overtime work is not just fair and reasonable, it is exceptional."). *See also Yorba*, 2022 WL

2436952, at *5; *Harsh*, 2021 WL 4145720, at *2-9 (observing that a recovery of 42% of the alleged overtime damages is "substantial relief"); *Vigna*, 2016 WL 7034237, at *2 (S.D. Ohio Dec. 2, 2016) (Dlott, J.) (approval of FLSA settlement where individual payments represented 55% of wages alleged owed).

### C. The Attorneys' Fees and Expenses to Plaintiffs' Counsel Under the Lodestar Approach are Proper and Reasonable.

The FLSA[4] provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Federal courts have long recognized the profound importance of plaintiffs' right to recover attorneys' fees under the FLSA. In *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Assoc., Local 307 v. G & M Roofing and Sheet Metal Co., Inc.*, the Sixth Circuit recognized that an award of attorneys' fees is mandatory under 29 U.S.C. §216(b). 732 F.2d 495, 501 (6th Cir. 1984). The Circuit Court explained that "the purpose of § 216(b) is to insure effective access to the judicial process by providing attorneys for prevailing plaintiffs with wage and hour grievances; [o]bviously Congress intended that the wronged employee should receive his full wages … without incurring any expense for legal fees or costs." *Id*. (alterations in original) (further citation omitted).

Providing attorneys' fees therefore is essential to ensure that low-wage workers will have access to counsel to enforce these important rights. Indeed, "[a]n award of attorneys' fees under the FLSA is mandatory, with the amount of fees within the discretion of the court." *Cruz v. VelA-*

---

[4] The Ohio Wage Act also provides for the recovery of attorney fees and costs, but the analysis will be limited to the right to attorney fees and costs under the FLSA. The Ohio Wage Act, R.C. § 4111.10(A) states that "Any employer who pays any employee less than wages to which the employee is entitled under section 4111.03" (the overtime provision that states an employer "shall pay an employee for overtime at a rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek") allows for the recovery of "costs and reasonable attorney's fees as may be allowed by the court." The Ohio Constitution provides the right to reasonable attorneys' fees for a party who recovers unpaid wages. *See* Ohio Const., Art. II, Section 34a.

*Da, Inc.*, No. 3:90CV7087, 1993 WL 659253, at *3 (N.D. Ohio May 14, 1993) (emphasis added) (citing *United Slate*, 732 F.2d at 501).

In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The standard for reviewing a request for attorneys' fees is reasonableness. *See Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991) (Smith, J.). Congress has determined that it is important for FLSA rights to be enforced and that reasonable attorneys' fees must be awarded to provide for such enforcement, particularly where the victims of FLSA violations are often low-wage workers whose per-person damages may not be significant. *Fegley*, 19 F.3d at 1134–43 (6th Cir. 1994). Thus, it is not uncommon for fee awards to exceed the amount recovered by plaintiffs in lost wages. *See City of Riverside v. Rivera*, 477 U.S. 561, 574, 78 (1986) (stating there is no rule of proportionality in cases awarding fees under § 1988 in order to ensure lawyers are available to represent persons with legitimate claims).

*Fegley* is the seminal Sixth Circuit case that stands for the fact that there is no requirement of proportionality between the attorneys' fees and costs sought and the amount recovered for violations of the FLSA. 19 F.3d 1126, 1130 (6th Cir. 1994) (awarding attorneys' fees that were more than five times the amount awarded to the plaintiff). Since *Fegley*, many courts within the Sixth Circuit (including this Court) have regularly granted attorneys' fees and costs in excess of

the amount recovered to plaintiffs in FLSA cases. *See, e.g.*, *Funk v. Airstream, Inc.*, No. 3:17-cv260, 2019 WL 4599816 (S.D. Ohio Sept. 23, 2019) (Rice, J.) (awarding $171,663.01 in attorneys' fees and costs where $21,338.00 was awarded to the FLSA collective); *Brantingham v. Emergency Servs., Inc.*, No. 2:16-cv-1169, 2017 WL 5175866 (S.D. Ohio Nov. 8, 2017) (Deavers, M.J.) (awarding $35,586.97 in attorneys' fees and costs and $13,168.63 in damages to plaintiffs); *Ford v. Carnegie Mgmt. Servs., Inc.*, 2017 WL 4390294 (S.D. Ohio Oct. 3, 2017) (Jolson, M.J.) (awarding $89,606.74 in attorneys' fees and costs and $24,893.26 to the collective); *West v. Emeritus Corp.*, No. 3:15-CV-437, 2017 WL 2880394 (M.D. Tenn. July 5, 2017) (awarding approximately $9,000 in damages and $46,000 in fees and costs); *Jasper v. Home Health Connection, Inc.*, No. 2:16-cv-125, 2016 WL 8202768 (S.D. Ohio Oct. 14, 2016) (Sargus, J.) (awarding $63,000 in attorneys' fees and costs, and $35,000 in damages to plaintiffs); *Moran v. Al Basit, LLC*, No. 13-cv-13625, 2016 WL 8201648 (E.D. Mich. May 5, 2016) (awarding $53,402.04 in attorneys' fees and costs and $13,350 in damages to plaintiff); *Macklin v. Delta Metals Co., Inc.*, No. 2:08-cv-02667, 2011 WL 13070420 (W.D. Tenn. July 6, 2011) (awarding $48,802.02 in attorneys' fees and costs after previously only awarding $300.15 in damages); *Abdelkhaleq v. Precision Door of Akron*, No. 5:07 CV 3585, 2010 WL 395236 (N.D. Ohio Jan. 25, 2010) (awarding $30,470.10 in attorneys' fees and $3,948.96 in damages).[5]

---

[5] Awarding attorneys' fees and costs in excess of the amount recovered is not something that is unique to the Sixth Circuit, as many courts throughout the United States regularly award and confirmed attorneys' fee awards in excess of the amount recovered by the plaintiff(s). *See, e.g.*, *Albers v. Tri-State Implement, Inc.*, No. CR. 06-4242-KES, 2010 WL 960010, at *26 (D.S.D. Mar. 12, 2010) (awarding $43,797 in fees even though plaintiffs' combined damages totaled only $2,137.97); *Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH, Dkt No. 819 (N.D. Ala. Feb. 17, 2009) (where in an FLSA case in which three individual donning and doffing claims were tried, the plaintiffs collectively recovered $4,937.20 in wages but were awarded $765,618.10 in attorneys' fees based on the attorneys' lodestar hourly rates); *Perrin v. John B. Webb & Assocs.*, No. 604CV399ORLKRS, 2005 WL 2465022, at *4 (M.D. Fla. Oct. 6, 2005) ("[I]n order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time."); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 955-56 (E.D. Wis. 2003) (awarding $36,204.88 in fees even though plaintiff's damages totaled only $3,540.00); *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1327 (M.D. Fla. 2001); *Perdomo v. Sears, Rosebuck & Co.*, No. 97-2822-CIV-T-17A, 1999 WL 1427752, at *10 (M.D. Fla. Dec. 3, 1999); *Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorneys' fees for a recovery of $20,000).

In determining reasonableness of fees, courts should evaluate multiple factors, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees. *Burcham v. Taubra Corp.*, No. 3:17-cv-168, 2018 WL 3840827, at *2 (S.D. Ohio Aug. 13, 2018) (Rose, J.) (citing *United Slate*, 732 F.2d at 501). The purpose of the FLSA attorneys' fees provision is to ensure effective access to the judicial process by providing attorneys' fees for prevailing plaintiffs with wage and hour grievances. *Id.* (citing *Fegley*, 19 F.3d at 1134). "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [in a FLSA case] encourage[s] the vindication of congressionally identified policies and rights." *Id.* (quoting *Fegley*, 19 F.3d at 1135).

Indeed, the Sixth Circuit again reaffirmed this well-established principle that there is no proportionality requirement or "cap" in awarding attorneys' fees under the FLSA's fee-shifting provision in two (2) recent opinions. *See Smyers v. Ohio Mulch Supply, Inc., et al.*, No. 21-3008, 2021 WL 2774665, at *2 (6th Cir. July 1, 2021) (reversing trial court's reduction of agreed upon attorneys' fees amount in FLSA settlement after erroneously holding attorneys' fees awards in FLSA cases should not be a large percentage of the total settlement amount.); *Rembert v. A Plus Home Health Agency, LLC*, 986 F.3d 613, 617 (6th Cir. 2021) (holding that "a district court abuses its discretion if it limits the fees awardable under the FLSA to a percentage of the plaintiff's recovery").

The starting point for determining the amount of a reasonable fee is multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Burcham*, 2018 WL 3840827, at *2 (citing *Hensley*, 461 U.S. at 433–34). In a claim for attorneys' fees, the court will determine the number of hours reasonably expended on the litigation and multiply that figure by a reasonable hourly rate. *Hensley*, 461 U.S. at 434; *see also Reed v. Rhodes*, 179 F.3d 453, 471 (6th

Cir. 1999) ("[A] court must first determine the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate.") (internal citations omitted). The resulting yield is what is known as the "lodestar." The Sixth Circuit has held that a "reasonable" fee is "one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, at 349 (6th Cir. 2000) (citing *Reed*, 179 F. 3d at 471); *see Dowling v. Litton Loan Servicing, LP*, No. 05-cv-098, 2008 WL 906042, at *2 (S.D. Ohio Mar. 31, 2008) (Marbley, J.) (quoting *Hadix*, 65 F.3d at 535); *Geier v. Sunquist*, 372 F.3d 784, 791 (6th Cir. 2004) ("The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers") (internal citations omitted).

As one District Court recently observed, District Courts use the lodestar method in certain wage and hour cases involving relatively small claims and therefore small amounts of damages in question and, as a result, counsel for employees will inevitably be required to expend substantial resources and time, sometimes accruing fees several times greater than the value of damages in the case. *Harsh*, 2021 WL 4145720 at *8. In these circumstances, such a result is still necessary because the remedial purpose of the FLSA is to help an employee recover their wages, however significant or small. *Id*.

To calculate the lodestar, the court first determines counsel's reasonable hourly rate(s) and the number of hours that counsel "reasonably expended" on the case. *Gresky*, 2022 WL 3700739, at *8 (citing *Rembert*, 986 F.3d at 616 (6th Cir. 2021) (citing *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013)). The district court has some discretion regarding the rates and hours that are reasonable, "but only when the court provides a clear and concise explanation of its

reasons for the fee award." *Id.* (quoting *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007)). Multiplying reasonable rates times reasonable hours yields the lodestar. *Id.* (citing *Waldo*, 726 F.3d at 821). There is no proportionality limit on recoverable attorneys' fees either. *Id.* (citing *Rembert*, 986 F.3d at 617).

      As noted above, the very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them. *Rembert*, 986 F.3d at 617. If courts in these cases capped the awardable fees at some percentage of that monetary value, therefore, many workers with valid FLSA claims—the nurse who was underpaid $1,500, the laborer underpaid $900— would be unable to "attract competent counsel" to represent them. *Id.* (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)).

      In arriving at the reasonable hourly rate, the court typically looks to the prevailing rate in the relevant legal community for similar services by attorneys of reasonably comparable skills, experience, and reputation. *Gresky*, 2022 WL 3700739 at *8 (citing *Adcock-Ladd*, 227 F.3d at 349 (6th Cir. 2000); and *Project Vote v. Blackwell*, No. 1:06-cv-1628, 2009 WL 917737, at *10–11 (N.D. Ohio Mar. 31, 2009) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11 (1984)). "Courts will frequently award fees based on an attorney's customary rate, because 'normal billing rates usually provide an efficient and fair short cut for determining the market rate.' " *Project Vote*, 2009 WL 917737, at *11 (internal quotation marks omitted).

      In this case, Plaintiffs' Counsel seeks approval of his lodestar, including hourly rate(s) and hours expended, that represent current market rates for individuals with their skills, experience, and reputation. In particular, attorney Daniel I. Bryant seeks approval of $41,160.31 in attorneys' fees based on his hourly rates of $275 (2019), $300 (2020), and $400 (2022 to present), all of

which have been previously approved by District Courts in other wage and hour matters, including collective and class action settlements. (*See* Ex. 2, Bryant Dec. at ¶¶ 8-12 and 34-40) Judge Helmick approved of attorney Bryant's hourly rate of $400 as reasonable in light of his "extensive experience representing employees in wage and hour matters, expertise, and skill." *Gresky*, 2022 WL 3700739, at *8. Further, the Court held that attorney Bryant's hourly rate fell within the range of hourly rates awarded by federal courts within the State of Ohio. *Id*. Most recently, this Court also preliminarily approved attorney Bryant's hourly rate of $400 per hour. *See Clark v. Miller Valentine Partners Ltd. II, et al.*, No. 1:20-cv-00295-DRC, Dkt No. 23 (S.D. Ohio Mar. 14, 2023) (Cole, J.). While Defendants have agreed that the amount of attorneys' fees is reasonable and do not oppose this request (Ex. 1, Agreement, ¶ 26-27; Ex. 2, Bryant Decl., ¶ 47), analysis of the factors used by the Sixth Circuit still warrant the request.

### D. Analysis of Factors Used by the Sixth Circuit to Evaluate an Award of Attorneys' Fees Supports Court Approval of the Requested Fee Recovery.

In *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), the Sixth Circuit established six relevant factors in the analysis of determining reasonable attorneys' fees. These factors include:

> 1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services of an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

*Id.* Other factors that may be considered can include (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the

circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3.

As discussed below, each of these factors weighs in favor of Plaintiffs' Counsel's lodestar of $41,160.31.

> **(1) The Value of the Benefit Rendered to the Plaintiffs Supports the Award of the Requested Attorney Fees.**

The Supreme Court defined prevailing parties as parties that achieve "success on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433. The Supreme Court further explained that, "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782, 792-93 (1989). *See also Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 605 (2001) (the essential test established by the Court requires the plaintiff to achieve a "judicially sanctioned change in the legal relationship of the parties").

In this case, but-for the efforts and experience of Plaintiffs' Counsel, they could not have achieved more than 100% of the maximum potential recovery. As a result, this factor favors approval of Plaintiff's request. *Gresky*, 2022 WL 3700739 at *9.

> **(2) Society's Stake in Rewarding Attorneys Who Produce Such Benefits Also Supports the Award of the Requested Attorney Fees.**

The second factor, "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive for others" also supports Plaintiffs' Counsel's fee request. As

observed by the Sixth Circuit above, wage and hour cases, like this one, often involve a large number of workers with relatively small individual claims. *Gresky*, 2022 WL 3700739 at \*10. Though the claims are individually small, the unpaid wages make a significant difference in the lives of workers. *Id*. Society has a strong interest in awarding attorneys who take on these cases and recover real benefits for exactly the type of workers the FLSA is designed to protect. *Id*. Were it not for the work of attorneys such as Plaintiffs' Counsel, the work of a number of employees would go uncompensated or undervalued. *Id*. (citing *Rembert*, 986 F.3d at 616-17). Application of the above principles to this case demonstrates that *Ramey*'s second factor as to "society's stake in awarding attorney's fees" favors Court approval of Plaintiff's Counsel's requested fee recovery.

### (3) The Fact that the Services Were Undertaken on a Contingent Fee Basis Also Supports the Award of the Requested Attorney Fees.

Despite having made investments of time and out-of-pocket expenses throughout this litigation, Plaintiffs' Counsel have received no compensation for this case. (*See* Ex. 2 Bryant Decl., ¶ 35) They have faced a significant risk of nonpayment because they undertook this litigation on a contingent basis. (*Id*.) *See Wright*, 2018 WL 3966253 at \*6; *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 766 (S.D. Ohio 2007) ("Several courts consider the risk of non-recovery the most important factor in fee determination"); *In re Telectronics Pacing Systems, Inc.*, 137 F.Supp.2d 1029, 1043 (S.D. Ohio 2001) ("contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery").

This factor weighs in favor of approving Plaintiffs' Counsel's requested fee recovery. Here, Plaintiffs' Counsel (not including attorney Laren E. Knoll) has devoted *over* 314.7 hours[6] to this action, knowing that, if their efforts are unsuccessful, they will recover nothing. Given the risks of

---

[6] Billing records to be made available to chambers upon request. The billing records do not include any hours beyond March 1, 2023 even though Plaintiffs' Counsel has incurred, but is not requesting as part of the Settlement, thousands of dollars in attorneys' fees since that date.

establishing liability and damages and the possibility of non-payment that has been present throughout this litigation, award of the requested fee is the fair result. (Ex. 2, Bryant Decl., ¶¶ 34-41)

### (4) The Value of the Services of an Hourly Basis also Supports the Award of the Requested Attorney Fees.

The fourth *Ramey* factor also strongly favors Plaintiffs' Counsel's requested fee recovery. As outlined above, the efforts of Plaintiffs' Counsel resulted in Plaintiffs receiving the maximum potential recovery of their alleged unpaid wages within the Calculation Period, which is equivalent to 300% of their damages. (Ex. 1, Agreement, ¶ 29; Ex. 2, Bryant Decl., ¶ 22). In light of the recovery, the amount of Plaintiffs' Counsel's fees is fair and reasonable and should be approved. *See Adcock-Ladd, supra*, 227 F.3d at 350 (6th Cir. 2000) (A "strong presumption favors the lawyer's entitlement to his lodestar fee.").

As part of settlement negotiations, Plaintiffs' Counsel has agreed to attorneys' fees at $41,160.31 even though his lodestar is in excess of $110,000, it does not include any attorney fees incurred by Laren E. Knoll of The Knoll Law Firm, LLC, and does not include thousands of dollars in attorneys' fees have been incurred since March 1, 2023. (*See* Ex. 2, Bryant Decl. at ¶ 40-41) Because Plaintiffs' Counsel is seeking to recover his negotiated lodestar, the fourth *Ramey* factor weighs heavily in favor of the fee request.

### (5) The Complexity of the Litigation Also Supports the Award of the Requested Attorney Fees.

As this Court has observed, wage and hour matters, including class and collective actions, are inherently complex. *Gresky*, 2022 WL 3700739 at *11; *Harsh*, 2021 WL 4145720, at *5. *Accord Satterly*, 2020 WL 6536342, at *5; *Brandenburg,* 2019 WL 6310376, at *3; *Wright*, 2018 WL 3966253, at *3. Though the subject matter of the lawsuit was not unfamiliar to Plaintiffs'

Counsel, payroll and time punch records were still required to be analyzed based on workweeks when Defendants' employees both worked overtime and received additional remuneration. "Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (citing *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986)). That presumption applies to Plaintiffs' request because their attorneys have culled their hours, their rates have previously been approved by District Courts within the Sixth Circuit, and/or have other further established their rates and fees are appropriate in light of their expertise and skill. *Gresky*, 2022 WL 3700739 at *11 (approving hourly rate of $400 per hour for attorney Bryant as reasonable and "falls within the range of hourly rates awarded by federal courts within the State of Ohio."). (*See also* Ex. 2, Bryant Decl., ¶¶ 8-12 and 39)

**(6) The Professional Skill and Standing of Counsel.**

The final *Ramey* factor, "the skill and efficiency of the attorneys," also favors Plaintiffs' Counsel's requested fee recovery. *Wright*, 2018 WL 3966253 at *7. The skill and efficiency of the attorneys is evidenced by their local reputations as well as their experience and expertise in the area. *See Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991) ("Finally, all counsel, Defense Counsel and Class Counsel alike, exercised the highest degree of skill and competence in this proceeding. It should be noted that the attorneys and their respective law firms enjoy the highest degree of respect in their communities. Furthermore, they have an outstanding reputation both locally and nationally.") As recently observed, when attorneys establish an expertise in a particular area such as wage and hour litigation, their hourly rates are further justified. *Gresky*, 2022 WL 3700739 at *11 ("The skill and efficiency of these

attorneys is evidenced by their local reputations as well as their experience and expertise in the area."); *Arp v. Hohla & Wyss Enterprises, LLC*, No. 3:18-CV-119, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020) (Rice, J.) (citing *Brandenburg*, 2019 WL 6310376, at *6) (holding that counsel's success on a specific type of case, specific legal issue, or results in other matters that directly benefit potential class members in future cases further justifies their hourly rates).

Fee applicants are to exercise "billing judgment," i.e., to exclude from their fees excessive, redundant or otherwise unnecessary hours, which would be unreasonable to bill a client. *See West v. AK Steel Corp. Retirement Accumulation Pension Plan*, 657 F.Supp.2d 914, 921 (S.D. Ohio 2009) (quoting *Hensley*, 461 U.S. at 437). Here, counsel has taken the affirmative steps to avoid excessive, redundant or duplicative hours during the litigation of this matter, particular here since Plaintiffs' Counsel, excluding the hours incurred by The Knoll Law Firm, has incurred in excess of 314.7 hours. However, as part of the Settlement, Plaintiffs' Counsel has agreed to $41,160.31, which is at least $70,000.00 less than Plaintiffs' Counsel's lodestar with respect to Bryant Legal, LLC. Plaintiffs' Counsel has also continued to accrue fees in this Action. (Ex. 2, Bryant Decl., ¶ 38-41)

### E. Plaintiffs' Counsel's Costs and Expenses are Reasonable because they were Necessary and Integral to the Prosecution of Plaintiffs' Claims.

Plaintiffs' Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and obtaining settlement. *Gresky*, 2022 WL 3700739, at *11 (citing *Satterly*, 2020 WL 6536342, at *11). When costs and expenses are incurred that are necessary to litigate and prosecute the lawsuit, they are reasonable. *Wright*, 2018 WL 3966253 at *7. In this case, the out-of-pocket costs incurred that were necessary to litigate and prosecute the lawsuit and obtain a settlement requested by Plaintiffs' Counsel are $13,642.15. (Ex.

2, Bryant Decl., ¶ 42). This includes reasonable costs for commencement of the litigation, postage, the issuance of notice, court reporter fees, and deposition transcripts. (*Id.*)

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court approve the FLSA Settlement as fair and reasonable in all respects, approve of the payment of agreed upon attorneys' fees in the amount of $41,160.31 and costs in the amount of $13,642.15, and dismiss this action with prejudice with respect to Counts VIII, IX, X, XI, XIII, and XV.

Respectfully submitted,

*s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1550 Old Henderson Rd.
Suite 126
Columbus, OH 43220
Phone: (614) 704-0546
Fax: (614) 573-9826
Email: dbryant@bryantlegalllc.com

Laren E. Knoll (0070594)
The Knoll Law Firm LLC
7240 Muirfield Drive, Suite 120
Dublin, Ohio 43017
Telephone: (614) 372-8890
Facsimile: (614) 452-4850
Email: lknoll@knolllaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_s/ Daniel I. Bryant_          
Daniel I. Bryant (0090859)
_Counsel for Plaintiffs_